# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

AHMED FERNANDEZ,

    Petitioner,

v.

WARDEN TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:18-cv-49

## **ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Ahmed Fernandez ("Fernandez"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Fernandez filed a Response. Docs. 8, 12. Respondent filed a Reply, and Fernandez filed a Surreply. Docs. 14, 15. For the reasons which follow, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss, **DENY** Fernandez's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Fernandez *in forma pauperis* status on appeal.

## BACKGROUND

The Southern District of Florida convicted Fernandez after he entered a plea of guilty to breaking and entering into carrier facilities, in violation of 18 U.S.C. § 2117(f). Doc. 1 at 1, 27; Doc. 1-1 at 1. The Southern District of Florida sentenced Fernandez to 60 months' imprisonment on February 9, 2016. Doc. 1 at 29. Fernandez has a projected release date of June 13, 2021, via good conduct time release. Id. at 30. Fernandez filed a motion for clarification

regarding the Southern District of Florida's judgment and requested to receive credit for time served, which the trial court denied on January 9, 2018. Id. at 33. Immigration and Customs Enforcement ("ICE") issued a detainer against Fernandez on April 24, 2018. Doc. 8-2 at 27.

**DISCUSSION**

In his Petition, Fernandez states he was arrested by Florida authorities on October 1, 2015, and was taken into federal custody on October 2, 2015. Doc. 1 at 7. Fernandez also states he has not been given credit toward his federal sentence from October 2, 2015, through February 6, 2017, and from September 17, 2017, through October 19, 2017. Doc. 1-1 at 6. Fernandez seeks to have all this time credited against his federal sentence.

Respondent states Fernandez failed to exhaust his administrative remedies before filing his Petition. In the alternative, Respondent asserts Fernandez's sentence has been properly calculated, and he is not entitled to any credit against his federal sentence. Doc. 8.

**I.      Whether Fernandez Exhausted his Administrative Remedies**

**A.      Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not

required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the United States Supreme Court has "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

3

consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of

4

administrative remedies.[2] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C.   Analysis of Fernandez's Efforts at Exhaustion

In his Petition, Fernandez asserts he exhausted his administrative remedies by filing the first and second steps of the grievance process at D. Ray James. Doc. 1-1 at 2. In addition, Fernandez states in response to the Motion to Dismiss he filed the last of the required administrative remedies on March 19, 2018, it was mailed certified on March 21, 2018, and it was delivered on March 23, 2018. Doc. 12 at 2; Doc. 12-1 at 2–5. While it appears Fernandez exhausted his administrative remedies at the first Turner step, out of an abundance of caution, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

---

[2]    Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition).

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures.[3] This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form within 20 days of the informal resolution request. An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form within five business days after the Step 1 response is returned. If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the Bureau of Prisons' ("BOP") Administrator of the Privatization Management Branch (BP-10), so long as the appeal involves BOP-related matters. Betancur v. Johns, Civil Action No.: 5:15-cv-87, 2016 WL 6396016, at *4 (S.D. Ga. Oct. 26, 2016), *adopted by* 2016 WL 7257000 (S.D. Ga. Dec. 14, 2016). Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. Pichardo v. Zenk, Civil Action No.: CV511-069, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (S.D. Ga. Oct. 26, 2011). If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal—Step 3—to the BOP's Office of General Counsel (BP-11). If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's

---

[3] It has been the Court's experience that inmates at D. Ray James Correctional Facility are to use the contractor's grievance procedures for exhaustion purposes, which vary slightly from the BOP's administrative remedies process, although both procedures require a final appeal with the Office of General Counsel. See, e.g., Martinez v. Johns, Civil Action No.: 5:17-cv-120, 2017 WL 4934674, at *3 (S.D. Ga. Oct. 31, 2017), *adopted by* 2017 WL 6029622 (S.D. Ga. Dec. 5, 2017). Indeed, Fernandez utilized the contractor's grievance procedure in initiating the administrative remedies process. Doc. 12-1 at 15–25. Accordingly, the Court's citation to the applicable grievance procedure shall be the contractor's procedure, not to the BOP's procedure Respondent cites, unless specifically noted. Doc. 8 at 5–6.

SENTRY computer database. Betancur, 2016 WL 6396016, at *4. Following Steps 1, 2, and 3 of the grievance process typically demonstrates exhaustion of remedies.

The evidence before the Court reveals Fernandez filed a GEO/DRJCF Attempt at Informal Resolution/Request for Administrative Remedy on November 15, 2017, in which he requested credit against his federal sentence. Doc. 12-1 at 25. Fernandez submitted another of these requests on January 12, 2018, seeking the same relief and noting he had not received a response to his earlier-submitted request. Id. at 24. On January 19, 2018, a case manager responded Fernandez had received all credit against his federal sentence to which he was entitled. Id. In the meantime, Fernandez submitted his Step 1 administrative remedy form (Number 18-003-01) on December 28, 2017, and cited his un-responded to informal resolution request of November 15, 2017, and requested a sentence recalculation and correction. Id. at 23. Though there is no indication when Fernandez received a response to his Step 1 remedy, he filed his Step 2 administrative remedy (Number 18-003-2) on January 23, 2018; it was received on January 23, 2018, and a response was due on or before March 4, 2018. Id. at 17–18. In the response dated February 1, 2018, Fernandez was informed he received all credit against his federal sentence he was entitled to, and his Step 2 administrative remedy was denied. Id. at 16.

Fernandez then dated his BP-10 appeal (Number 944960-R1) to the Administrator of the Privatization Branch and disputed the denial of his sentence recalculation requests at D. Ray James Prison. Id. at 10–13. This appeal was postmarked on February 9, 2018, bearing tracking number 70172680000114257324 on the certified mail receipt. Doc. 15-1 at 8. This certified mail was delivered on February 12, 2018. Id. at 9. Fernandez's response from Pamela L. Jones, Administrator of the Privatization Management Branch, was dated June 29, 2018, and apparently was received at D. Ray James on July 9, 2018. Id. at 12–13.

Fernandez dated his Central Office Administrative Remedy March 21, 2018, and stated, as of that date, he had not received any response from the Regional Office regarding his appeal.[4] Doc. 12-1 at 2. Fernandez's certified mailing postmarked March 21, 2018, was addressed to "BOP Central Office App-BP11 GC, 320 First Street NW, Washington DC 20534." Doc. 15-1 at 2. The mailing bore tracking number 70172680000114256785 and was delivered on March 23, 2018. Id. at 3. There is nothing indicating Fernandez received a response to his Central Office-General Counsel appeal.

Respondent submitted affidavits in support of his position Fernandez failed to exhaust his administrative remedies prior to the filing of his § 2241 Petition. Docs. 8-1, 14-1. Glenda Dykes, an administrative remedy clerk with the BOP, states Fernandez submitted one administrative remedy regarding jail credit, but he raised the issue at the BP-10 level, not at any other required levels. Doc. 8-1 at 2, 3. Ian Connors, the National Inmate Appeals Administrator, notes Fernandez's assertion that he filed an appeal (BP-11) with the Central Office, but that appeal was not processed by that office or was misplaced by that office. Doc. 14-1 at 1. In response, Mr. Connors declares the Central Office receives "approximately 11,000 administrative remedy submissions per year," and, upon receipt, the clerk will "date stamp the inmate's administrative remedy submission and log the submission into . . . SENTRY[,] . . . the official system of records for inmate administrative remedy filings." Id. at 2. Mr. Connors states his review of the SENTRY data revealed that Fernandez filed an administrative remedy at the BP-10 level challenging his sentence computation but not a remedy at the BP-11 level. Id. at 2–3. Mr. Connors recognizes that Fernandez provided a certified mail receipt for what he claims

---

[4] Fernandez dated his Central Office appeal March 19, 2018, doc. 12-1 at 4, but provides March 21, 2018, in the body of his appeal. Doc. 12-1 at 2. Thus, the Court considers March 21, 2018, as the date of filing.

8

was his BP-11 filing, but the SENTRY system does not indicate such a filing, nor does the tracking sheet reveal the address Fernandez sent this mailing to or the contents of this mailing. Id. at 3. Additionally, Mr. Connors opines that, based on the prison mail log, Fernandez mistakenly sent his mailing to the BOP Programs Division, which is not the division that handles administrative remedies. Id. Mr. Connors states the BP-11 should have been sent to the Office of General Counsel at 320 First Street, NW, Washington, D.C. 20534. Id. at 4.

There appears to be no disagreement between the parties regarding Fernandez's filing of a BP-10 level remedy request. Id. at 3; Doc. 12-1 at 28. However, the parties do disagree as to whether Fernandez filed a BP-11 with the Office of General Counsel, the final step of the administrative remedies process. As this appears to be the only point of disagreement between the parties, the Court focuses on whether Fernandez filed his BP-11 to the proper office and in a timely manner.

Despite Respondent's contention that Fernandez did not properly file a BP-11, Fernandez has presented evidence that he sent his BP-11 to the proper office in a timely manner. Fernandez dated his BP-10 February 6, 2018, it was postmarked on February 9, 2018, and it was received and filed on February 12, 2018. Doc. 12-1 at 10, 14; Doc. 14-1 at 7; Doc. 15-1 at 8–9. At the BP-10 level, a response is to be made within 30 days of filing. 28 C.F.R. § 542.18. "If the inmate does not receive a response within the allotted time for reply . . . the inmate may consider the absence of a response to be a denial at that level." Id. Thus, Fernandez should have received a response to his BP-10 on or before March 14, 2018. A response was not made on his BP-10 until June 29, 2018. Doc. 15-1 at 13. In the meantime, Fernandez mailed his BP-11 to the BOP's Central Office "GC" (which the Court takes as meaning "General Counsel") to: 320 First Street NW, Washington, D.C. 20534, and his certified mail receipt evidencing this was

postmarked March 21, 2018.  Id. at 2.  According to the United States Postal Service's Tracking results, certified mail bearing tracking number 70172680000011425678 was received in Washington, D.C. 20534 on March 23, 2018.  Id. at 3.  In the absence of any evidence this was properly documented in the SENTRY system,[5] the Court considers March 23, 2018, as the date Fernandez's BP-11 was filed.  Accordingly, the Office of General Counsel was to respond to Fernandez's appeal on or before May 2, 2018.  28 C.F.R. § 542.18 ("Once filed, response shall be made . . . by the General Counsel within 40 calendar days.").  Because Fernandez did not receive a response on or before May 2, 2018, he could consider "the absence of a response to be a denial at that level."  Id.

As set forth earlier in this Report, Fernandez's request for credit against his sentence concerns a BOP-related matter which must be appealed through the above-described process, which it appears Fernandez did prior to filing his § 2241 Petition on June 14, 2018.  Based on the record before the Court, Fernandez exhausted his administrative remedies prior to the filing of his Petition.  Consequently, the Court should **DENY** this portion of Respondent's Motion to Dismiss.

**II.     Whether Fernandez is Entitled to Credit Against his Sentence**

Although Fernandez exhausted his administrative remedies prior to the filing of his Petition, he is not entitled to his requested relief of receiving credit against his federal sentence.

---

[5]     The Court realizes D. Ray James Prison's mail log reveals certified mail receipt number 70172680000114256785 was mailed to "BOP Programs" in Washington, D.C. 20534 on March 20, 2018, doc. 14-1 at 13, and that Fernandez's BP-11 was not processed into the SENTRY system.  However, the Court was unable to find any mailing address for the BOP in Washington, D.C. other than 320 First Street, NW.  In addition, it is possible the mailroom intake clerk at D. Ray James improperly wrote "BOP Programs" in the log or meant "BOP Programs" to signify a general mailing to the BOP in Washington, D.C.  In addition, it is possible Fernandez's BP-11 was lost or otherwise not processed once it reached the Office of General Counsel, which is why it was not entered into the SENTRY system.  Given Mr. Connors' statement that his office receives approximately 11,000 submissions per year, id. at 2, it is equally possible Fernandez's BP-11 was overlooked or misplaced.  No system is infallible.

It is the duty of the United States Attorney General, acting through BOP, to determine the amount of credit due for the time served by the defendant "for any time he has spent in official detention prior to the date the sentence commences." United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010). Section 3585 of Title 18 of the United States Code, which pertains to "credit for prior custody," is controlling for making credit determinations for sentences imposed under the Sentencing Reform Act of 1984. This statute provides:

> (a) Commencement of sentence. A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit of Prior Custody. A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> <u>that has not been credited against another sentence</u>.

18 U.S.C. § 3585 (emphasis added). In determining the proper credit, a two-part analysis is helpful. First, it must be determined when the sentence commenced. A sentence "'cannot begin prior to the date it is pronounced, even if made concurrent with a sentence already being served.'" Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006) (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." United States v. Ballard, 6 F.3d 1502, 1505 (11th Cir. 1993); see also 18 U.S.C. § 3584(a).

Fernandez was arrested by Miami-Dade (Florida) authorities on October 1, 2015, based on his failure to register as a sex offender. Doc. 8-2 at 9. The United States Marshals Service

11

("USMS") lodged a detainer against him on October 2, 2015, based on federal charges of theft of mail and breaking and entering a carrier facility, forming the basis of Case Number 15-cr-20781 in federal court. Doc. 1 at 11. Fernandez asserts that the Florida state court would not release him on bond because of the federal detainer. Id.

On October 9, 2015, the District Court for the Southern District of Florida issued a writ of habeas corpus *ad prosequendum* in Case Number 15-cr-20781. Id. As a result, on October 15, 2015, Fernandez was placed in the temporary custody of the USMS. Id.; Doc. 8-2 at 3, 14, 22. Fernandez pleaded guilty to the federal charges, and, on February 9, 2016, the District Court for the Southern District of Florida sentenced Fernandez to 60 months' imprisonment on those charges. Doc. 8-2 at 16–17; Doc. 1 at 29. Fernandez was returned to state custody on February 18, 2016. Doc. 8-2 at 3, 22.

Approximately one year later, on February 6, 2017, Fernandez was sentenced in state court on the failure-to-register charge to 494 days, time served. Id. at 11, 12. The sentence—494 days, time served—represents the time between October 1, 2015, the date Fernandez was initially taken into custody, and February 6, 2017, the date the state court imposed its sentence. Despite the fact that his state court sentence was for time served, it appears that Fernandez remained in state custody for several months after the sentence was imposed, until September 17, 2017, when he was taken to the Federal Detention Center in Miami, Florida. Doc. 12 at 6. Fernandez was transported to D. Ray James on October 19, 2017.[6] Id.

---

[6] During this time, Fernandez was also subject to a separate "new charge" of burglary by state authorities and was sentenced to "36 months suspended." Doc. 1-1 at 5. Fernandez does not argue that the state court burglary charge impacts his request in this § 2241 Petition. Accordingly, that charge and sentence have not impacted the Court's analysis.

12

On November 13, 2017, soon after Fernandez arrived at D. Ray James, the BOP conducted a sentence computation. Doc. 8-2 at 25–26. The sentence computation identifies the term of Fernandez's sentence, the date Fernandez entered federal custody, credits Fernandez should receive against his sentence, and his projected release date. Id. Fernandez asserts the computation is incorrect and that he should receive credit toward his sentence "from October 2, 2015 throughout [sic] October 19, 2017."[7] Doc. 1 at 7. These dates correspond to the date the state court refused to release Fernandez on bond (October 2, 2015) and the date he was transferred to D. Ray James (October 19, 2017). Fernandez argues he was in federal custody during this period, and he should, therefore, receive credit for this time against his federal sentence.

As an initial matter, it is clear that the BOP computation already includes a credit for a portion of the period Fernandez has identified. The BOP determined that Fernandez was on "exclusive" federal custody beginning on September 18, 2017, which is the date he was taken to the Federal Detention Center in Miami and, therefore, the date when his 60-month federal sentence commenced. Id. Thus, the BOP determined that Fernandez began serving his sentence on September 18, 2017, when he was taken into federal custody, not October 19, 2017, when he was transferred to D. Ray James. Additionally, the BOP's computation includes 225 days of credit against Fernandez's federal sentence based on the time Fernandez was in state custody after his time-served sentence was entered in the state court (February 6, 2017) until he was transferred to federal custody and his federal sentence commenced (September 17, 2017). Id. Thus, any request for a credit for the period between February 6, 2017, and October 19, 2017, is

---

[7] Elsewhere, Fernandez argues for a narrower credit. See Doc. 1-1 at 3 ("The Computation record date however, does not reflec [sic] any time credited toward his sentence from October 2, 2015 through February 2017 and September 17, 2017 through October 19, 2017." [sic]). To avoid any doubt, the Court considers Fernandez's broadest request: credit from October 2, 2015, to October 19, 2017.

13

moot because the BOP will count all of that time against Fernandez's federal sentence, either as a credit or as time served after the commencement of his sentence.[8]

But, Fernandez claims he is entitled to additional credit—namely for the earlier period of October 2, 2015, to February 6, 2017. To determine whether Fernandez is entitled to additional credit, the court must begin with the plain language of the controlling statute: 18 U.S.C. § 3585. Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."). Section 3585(b) clearly states that, in some circumstances, a defendant is entitled to credit for time served prior to sentence commencement *unless* that time has been credited against another sentence.

Fernandez was sentenced to 494 days, time served, on his state-court charges. That sentence reflects the time Fernandez was in custody between October 1, 2015, and February 6, 2017. Thus, regardless of whether Fernandez was in federal or state custody for some or all of that time, he has already received credit for that time, namely credit against his state court sentence. Under the plain language of § 3585(b), he cannot receive credit for any time in official detention if that time has already "been credited against another sentence." See Scruggs v. Adkinson, 423 F. App'x 858, 861 (11th Cir. 2011) ("The time Scruggs served during his state court pre-trial detention was credited towards his state sentence, and therefore cannot also be credited towards his federal sentence."); Castillo v. Fed. Corr. Inst. of Tallahassee, 163 F. App'x

---

[8] Indeed, the BOP's computation would have come out the same if Fernandez had been immediately transferred to federal custody to start serving his sentence on the day the state court sentenced him to time served, February 6, 2017. In that case, Fernandez's full-term release date on the 60-month sentence would have been in February 2022, which is the same as the BOP's actual computed full-term release date.

803, 804 (11th Cir. 2006) (affirming denial of § 2241 petition asking for credit for time served, where state court already gave credit for the same period of time). Fernandez simply cannot receive credit for his time in custody that has already been credited against his state court sentence.[9]

In sum, Fernandez seeks credit against his federal sentence for time he was in custody from October 2, 2015, to October 19, 2017, but all of that time has already been accounted for. Of this period, Fernandez received credit for October 2, 2015, to February 6, 2017, against his state sentence. The remainder of the period, February 6, 2017, to October 19, 2017, has been credited against or included in Fernandez's federal sentence. Under § 3585, Fernandez is not entitled to any additional credit against his federal sentence. The Court should **GRANT** Respondent's Motion to Dismiss for this reason and **DENY** Fernandez's Petition.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Fernandez leave to appeal *in forma pauperis*. Though Fernandez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that

---

[9] The Court recognizes Fernandez's argument he should be credited with "time already served in federal custody" based on the issuance of the writ of habeas corpus *ad prosequedum* (i.e., the time he was in USMS' pretrial custody before sentencing on the federal charge). Doc. 1 at 6. Fernandez, however, was not in federal custody as a result of this writ for purposes of his sentence calculation. See Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980) (A writ of habeas corpus *ad prosequendum* is "only a loan of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction."). Additionally, the fact the state may have refused to release Fernandez on bond during the time the federal detainer was in place does not change that status. Scruggs, 423 F. App'x at 861 (rejecting argument that credit should be given because state pretrial custody arose from federal detainer). Regardless, the Court reiterates it is immaterial whether Fernandez was in state or federal custody between October 2, 2015, through February 6, 2017, or for any other time prior to when his federal sentence commenced on September 18, 2017. Fernandez has already received credit for this time and is not entitled to any additional credit against his federal sentence. 18 U.S.C. § 3585.

the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Fernandez's Petition, Respondent's Motion to Dismiss, and the responsive pleadings, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss, **DENY** Fernandez's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** that the Court **DENY** Fernandez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Fernandez and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 27th day of February, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA